UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | **ORDER** |
| ALEKSANDR BURMAN, | 16 Cr. 190 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

        On December 16, 2020, Defendant Aleksandr Burman filed a second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Def. Br. (Dkt. No. 89) at 1)  The Government opposes Burman's application.  (Govt. Opp. (Dkt. No. 91))

        For the reasons stated below, Burman's motion will be denied.

## BACKGROUND

        On May 10, 2017, this Court sentenced Burman to 220 months' imprisonment after he pled guilty to conspiracy to commit health care fraud and wire fraud (Information (Dkt. No. 2) Count One), health care fraud (id. Count Two), and committing an offense while on pre-trial release (id. Count Three)).  (See Am. Judgment (Dkt. No. 74 at 2; Sentencing Tr. (Dkt. No. 50) at 58)  Burman is currently serving this sentence at the satellite federal prison camp ("Fairton Camp") associated with the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton").  (Def. Br. (Dkt. No. 89) at 15)

        In his first compassionate release motion, Burman argued that his medical conditions make him especially vulnerable to the COVID-19 virus, and that the conditions at FCI Fairton make it "impossible" to take appropriate precautions, such as social distancing and hand hygiene.  (Def Br. (Dkt. No. 79) at 4, 12)

On June 13, 2020, this Court denied Burman's application. (Order (Dkt. No. 88)) Although the Court found that Burman had exhausted his administrative remedies, the Court concluded that Burman was not entitled to compassionate release. The Section 3553(a) factors counseled against granting Burman's application, because he had committed his crimes "while awaiting sentencing in another health care fraud case"; he had "lied to another federal judge, and thereby obtained a probationary sentence that had no deterrent effect"; and the ten-year sentence imposed by this Court – of which Burman had only served three years – "represents a significant reduction from (1) the actual Guidelines range of 188 to 235 months' imprisonment, and (2) the parties' stipulated Guidelines range of 135 to 168 months' imprisonment." (Id. at 7) This Court further concluded that Burman had not shown "extraordinary and compelling reasons" warranting a reduction in his sentence. At the time that Burman filed his first compassionate release motion, there were no COVID-19 cases at the Fairton Camp. (Id. at 9)

On December 16, 2020, Burman filed a second motion for compassionate release, in which he argues the following material changes in circumstance: (1) pursuant to United States v. Brooker, 976 F.3d 228 (2d Cir. 2020), U.S.S.G. § 1B1.13 no longer governs his application; and (2) additional medical conditions, not previously brought to this Court's attention, make him especially vulnerable to the COVID-19 virus. (Def. Br. (Dkt. No. 89) at 1, 8-9)

On December 31, 2020, the Government informed the Court that Burman had tested positive for the COVID-19 virus. (Dec. 31, 2020 Govt. Ltr. (Dkt. No. 92)) The next day, defense counsel informed the Court that 37 inmates detained at the Fairton Camp had tested positive for the COVID-19 virus.[1] (January 1, 2021 Def. Ltr. (Dkt. No. 93) at 2)

---

[1] On or about January 6, 2021, the Court also received a letter directly from Burman, in which he states that he tested positive for the COVID-19 virus. (Def. Ltr. (Dkt. No. 97))

2

In a February 2, 2021 letter, the Government reports that since Burman's positive COVID-19 test on December 29, 2020, his body temperature and oxygen levels have remained normal. (Feb. 2, 2021 Govt. Ltr. (Dkt. No. 99)) Burman has told medical personnel that he is experiencing intermittent chest pain and shortness of breath. (Id.) The Government also reports that Burman's vital signs are checked six or seven days per week; he receives regular exams twice a week; and he receives cardiac evaluations once a month. (Id.)

## DISCUSSION

### I. LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A).

Pursuant to this statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

As discussed above, this Court has previously determined that Burman exhausted his administrative remedies. (See Order (Dkt. No. 88) at 4) The Government has not argued that Burman was required to apply again to the warden of FCI Fairton for compassionate release. (Govt. Opp. (Dkt. No. 91)) Accordingly, this Court will go on to consider Burman's application on the merits.

3

A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a); determine whether there are "extraordinary and compelling reasons [that] warrant such a reduction"; and consider whether a sentencing "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

## II. ANALYSIS

### A. "Extraordinary and Compelling Reasons"

Burman contends that his compassionate release motion should be granted because: (1) certain medical conditions not previously brought to this Court's attention render Burman especially vulnerable to COVID-19 virus; and (2) pursuant to United States v. Brooker, 976 F.3d 228 (2d Cir. 2020), U.S.S.G. § 1B1.13(1)(A) no longer governs his application, and this Court is now free to "consider [the] full slate of extraordinary and compelling reasons that an imprisoned person might bring before [a court in support of a] motion[] for compassionate release," and it need not make a finding that Burman does not present a danger to the community. (Def. Br. (Dkt. No. 89) at 1, 8-9 (citing United States v. Brooker, 976 F.3d 228 (2d Cir. 2020))

This Court's June 13, 2020 order denying Burman's first compassionate release motion contains the following discussion of U.S.S.G. § 1B1.13(1)(A):

> In order to prevail on his compassionate release motion, Burman must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence, and that any reduction that is granted comports with "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).
>
> Congress tasked the Sentencing Commission with providing guidance to courts regarding the application of the compassionate release statute. See 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the

4

> criteria to be applied and a list of specific examples. . . ."); United States v. Ebbers, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); see also United States v. Hernandez, No. 18 Cr. 834 (PAE), Dkt. No. 451.
>
> The Commission's policy statement and commentary concerning Section 3582(c)(1)(A) outline several circumstances that constitute "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). Finally, a defendant seeking compassionate release must demonstrate that his release will not present a danger to the community. U.S.S.G. § 1B1.13(2)-(3).

(Order (Dkt. No. 88) at 7-8)

In Brooker, however, the Second Circuit clarified that Section 1B1.13 applies "only to those motions that the BOP has made" on behalf of inmates, and is "not 'applicable' to compassionate release motions brought by defendants[.]" Brooker, 976 F.3d at 235-36 (citing U.S.S.G. § 1B1.13). As a result, "[n]either the Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion" in deciding a defendant's compassionate release motion. Id. at 236. Courts may "look[] to § 1B1.13 for guidance in the exercise of [their] discretion, but [are] free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" United States v. Rodriguez, 16-cr-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting Brooker, 976 F.3d at 237))

### 1. Burman's Medical Conditions

In his second compassionate release motion, Burman – who is 58 – contends that he suffers from hypoglycemia and Hepatitis C, and that these conditions were not "entirely presented to this Court" in his first motion. (Def. Br. (Dkt. No. 89) at 8; Def. Reply (Dkt. No. 95) According to Burman, these conditions render him vulnerable to the COVID-19 virus. (Id.) Burman also asserts that he suffers from Type II diabetes mellitus, hypertension, coronary artery

5

disease, a detached retina, a herniated disc, and lumbar stenosis. (Def. Br. (Dkt. No. 89) at 8-9) Burman further states that his respiratory system has been "severely affected" by his "life long smok[ing]" and "previous abuse[] of Opioids."[2] (Id. at 9) Burman further contends that the CDC "has walked back the '65 and over risk' factor," and instead "highlights that all ages could catch the coronavirus but effects of the infection get worse as people get older on a sliding scale." (Id. at 8)

Except for Burman's smoking and alleged abuse of opioids, all of the medical conditions he now cites were presented to, and considered by, this Court in connection with Burman's first compassionate release motion. (Def. Br. (Dkt. No. 79) at 3-9; Order (Dkt. No. 88) at 2, 8-9) As to his smoking and opioid abuse, Burman points to no evidence in his medical records that his smoking and opioid abuse have damaged his respiratory system. (See Def. Br. (Dkt. No. 89)) The Court acknowledges, however, that the CDC has determined that smokers who contract the COVID-19 virus face an increased risk of severe illness. See People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL AND PREVENTION: COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021).

As noted above, on December 29, 2020 – after Burman submitted his second compassionate release motion – he tested positive for the COVID-19 virus. (Dec. 31, 2020

---

[2] Burman also contends that he suffers from obesity, and that the "number one risk factor" associated with COVID-19 is "obesity, a BMI of 28 or more." (Def. Br. (Dkt. No. 89) at 8) The CDC defines obesity as a BMI between 30 kg/m$^2$ and 39 kg/m$^2$, however, see People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL AND PREVENTION: COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021), and Burman's medical records show that he has a BMI of 28.5. (See Jan. 4, 2021 Medical Records at 93) There is no indication in Burman's medical records that he suffers from obesity. (See generally id.)

Govt. Ltr. (Dkt. No. 92))  The Government reported in its December 31, 2020 letter that, as of that date, Burman was asymptomatic, but was being "seen by medical staff daily to take his vital signs."  (Id.)  In a January 1, 2021 letter, Burman's counsel stated that Burman reported "feeling terrible" and complained that he had "received no medical care[.]"  (Jan. 1, 2021 Def. Ltr. (Dkt. No. 93) at 1)

In a January 4, 2021 letter, the Government reported that Burman had been moved into isolation, that his "temperature, pulse, and oxygen saturation levels in his blood continue to be normal," and that his vital signs "have been checked once or twice per day by medical personnel," including "checking Burman's temperature, pulse, blood-oxygen saturation, respiration rate, blood pressure, and blood glucose levels."  (Jan. 4, 2021 Govt. Ltr. (Dkt. No. 94) at 1); see also Burman medical records as of January 4, 2021 (submitted under seal) ("Jan. 4, 2021 Medical Records") at 1, 5, 9, 13-15)  Burman had complained of shortness of breath, chest pain, and general pain, and requested Tylenol.  (Id.; Jan. 4, 2021 Medical Records at 1)  He was prescribed 659 mg of Tylenol three times per day and a refill for his nebulizer inhaler.  (Id.; Jan. 4, 2021 Medical Records at 23, 44)  Medical personnel had "observed that, despite Burman's subjective complaints, he did not appear to be in any acute distress and had a blood-oxygen saturation level of 100%."  (Id.; Jan. 4, 2021 Medical Records at 2)

In a February 1, 2021 order, this Court directed the Government to provide an update concerning Burman's medical condition.  (Order (Dkt. No. 98))

In a February 2, 2021 letter, the Government reports that, according to Burman's medical records, his "COVID-19 symptoms consisted largely of subjective complaints, particularly including complaints of intermittent chest pain and 'exertional shortness of breath[,]'" but that his temperature and blood oxygen levels remained normal after he tested

7

positive in December 2020.  (Feb. 2, 2021 Govt. Ltr. (Dkt. No. 99); see also Burman medical records as of February 2, 2021 (submitted under seal) ("Feb. 2, 2021 Medical Records") at 3, 5, 7, 10-11, 14-16, 22, 24, 27-29, 37-38, 46-47)  Burman was cleared to leave isolation housing on January 22, 2021.  (Feb. 2, 2021 Medical Records at 5)  The Government further reports that Burman is examined by medical staff at FCI Fairton twice per week; that his vital signs are taken six or seven days per week; and that he is being treated by a cardiologist for his hypertension, weight, and chest pains.  (Id.; Feb. 2, 2021 Medical Records at 2, 3, 7, 10-11, 14, 22, 27-29, 37-48, 93-94)  Burman's cardiac evaluations are scheduled to continue on a monthly basis for at least the next two months.  (Id.; Feb. 2, 2021 Medical Records at 5)   The Government concludes that Burman "has come through his exposure to COVID-19 reasonably well."  (Id.)

Given that Burman contracted, and appears to have recovered from, the COVID-19 virus, his motion for compassionate release "is no longer 'about the adequacy of preventative measures to ensure that [he] does not contract the virus or the potential risk to him . . . – particularly due to underlying health conditions – if he . . . were to do so.' . . . Instead, the Court focuses on the impact of COVID-19 on [the defendant] and his ability to 'provide self-care' within the correctional facility in light of his diagnosis." United States v. Adams, No. 10-cr-82 (RJS), 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020) (quoting United States v. Zubkov, 460 F. Supp. 3d 450, 455 (S.D.N.Y. 2020)); (citing United States v. Davis, 12-Cr-712 (SHS), 2020 WL 3790562, at *2 (S.D.N.Y. July 2, 2020); United States v. Russo, 454 F. Supp. 3d 270, 279 (S.D.N.Y. 2020); U.S.S.G. § 1B1.13))

Numerous courts have denied compassionate release motions where – as here – the evidence shows that a defendant who has contracted COVID-19 is being appropriately treated and in stable condition.  See, e.g., United States v. Martin, 15-CR-6132-FPG, 2020 WL

4361679, at *2 (W.D.N.Y. July 30, 2020) (denying compassionate release motion where defendant had asthma, but court found that defendant had not presented evidence suggesting "that the medical care he would receive if released is superior to the medical care he is currently receiving," and had not "describe[d] any additional treatment for COVID-19 that he should be receiving or that he could receive if he were released"); United States v. Weiskopf, 19-CR-6093-FPG, 2020 WL 3248383 (W.D.N.Y. June 16, 2020) (denying compassionate release motion where defendant was "receiving adequate medical care," including being placed in quarantine and "being examined by medical staff twice daily") (internal quotation marks omitted); Zubkov, 460 F. Supp. 3d at 455-56 (denying compassionate release where defendant continued to have symptoms after recovering from COVID-19, but was in stable condition and was receiving adequate medical care in prison).

Moreover, where – as here – a defendant contracts and recovers from the COVID-19 virus, the defendant's recovery "weighs against granting that defendant compassionate release." United States v. Delorbe-Luna, No. 18-CR-384 (VEC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020); see also United States v. Marley, 16-CR-374 (VEC), 2020 WL 7768406, at *2-3 (S.D.N.Y. Dec. 30, 2020) ("[N]ow that [defendant] has contracted and recovered from [COVID-19] . . . there is no basis to find that [defendant] has demonstrated the extraordinary and compelling circumstances necessary to afford him the exceptional relief of a sentence reduction."); United States v. Hardy, 11-CR-629-5 (CS), 2020 WL 7711676, at *2 (S.D.N.Y. Dec. 29, 2020) ("Now that [the defendant] has contracted and seemingly weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense."); United States v. Williams, No. 3:11-cr-172-1(VLB), 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) ("This Court and others have declined to find 'extraordinary and compelling

circumstances' in cases where a defendant has a prior COVID-19 diagnosis."); United States v. Perez, No. 04 Cr. 937-1 (NRB), 2020 WL 4677586, at *1 (S.D.N.Y. Aug. 11, 2020) ("While it is unfortunate that defendant suffered from COVID-19 while in custody, contraction of a disease generally does not constitute an extraordinary and compelling basis for release. The fact that defendant recovered from COVID-19 further supports this conclusion.")

The Court concludes that Burman has not shown that his medical conditions constitute "extraordinary and compelling reasons" justifying compassionate release.

### 2. **Whether *Brooker* Justifies Relief**

Burman contends that Brooker constitutes a material change in circumstances that warrants his release. As discussed above, in Brooker the Second Circuit held that district courts are free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release[,]" and are not required to find, pursuant to U.S.S.G. § 1B1.13, that a defendant's release will not present a danger to the community. Brooker, 976 F.3d at 235-238. However, courts remain free – even after Brooker – to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" under Section 3582(c)(1)(A). Rodriguez, 2020 WL 7640539, at *3.

Here, Burman argues that he does not present a danger to the community, citing his assignment to the Fairton Camp; his efforts to complete educational and work programs while in prison; his participation in drug rehabilitation classes; his payments toward his fine; and his scores on the PATTERN risk assessment, which show that he has a "minimum" risk of recidivism.[3] (Def. Br. (Dkt. No. 89) at 20-21, 40).

---

[3] The PATTERN risk assessment tool was developed pursuant to the First Step Act of 2018 and seeks to assess inmates' risk of recidivism. See "The First Step Act of 2018: Risk and Needs Assessment System," 43, U.S. DEP'T OF JUSTICE (July 19, 2019),

10

While Burman appears to have made a good adjustment to incarceration, this Court's previously expressed concerns regarding the risk of recidivism remain:

> Burman was not deterred by his 2012 sentence of probation, and there is no reason to believe that he will remain law abiding after serving only a third of the ten-year sentence imposed by this Court on May 10, 2017. Home confinement cannot ensure that Burman will not engage in future criminal conduct. As the Court noted at sentencing, frauds of the sort perpetrated by Burman 'are hard to detect and prosecute,' and so 'the sentence imposed must be sufficient to deter conduct of this sort.' (Sentencing Tr. (Dkt. No. 50) at 47) Burman's repeated serious criminal conduct – committed while cooperating with the Government in connection with an earlier health fraud case – and the lies he told to the sentencing judge in order to obtain his probation sentence, demonstrate that home confinement is not sufficient to prevent Burman from committing future crimes.

(Order (Dkt. No. 88) at 10)

In sum, Burman's efforts at rehabilitation are not sufficient – when weighed against the serious nature of his criminal conduct, his lies to a federal judge, and the fact that he has only served approximately three-and-a-half years of a ten-year sentence – to ameliorate this Court's concerns regarding the risk of recidivism. See Martin, 2020 WL 4361679 at *3 ("The Court commends Defendant for his educational efforts, which weigh in his favor. Any considerations weighing in Defendant's favor, however, are outweighed by the factors that supported and continue to support Defendant's sentence.") Moreover, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason [justifying compassionate release].'" Brooker, 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (emphasis in Brooker).

The Court concludes that neither Burman's current medical conditions nor Brooker's treatment of U.S.S.G. § 1B1.13 justify compassionate release.

---

https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf

11

### B. Section 3553(a) Factors

In connection with Burman's first compassionate release motion, this Court concluded that analysis of the Section 3553(a) factors counseled against Burman's release. (Order (Dkt. No. 88) at 7)  Although Burman has served another six months of his ten-year sentence, none of the facts bearing on the Section 3553(a) analysis have materially changed since this Court's June 13, 2020 order:

> Analysis of the Section 3553(a) factors counsels against granting Burman's application for compassionate release.  Burman committed the instant offense while awaiting sentencing in another health care fraud case.  He lied to another federal judge, and thereby obtained a probationary sentence that had no deterrent effect.  Moreover, the ten-year sentence imposed by this Court represents a significant reduction from (1) the actual Guidelines range of 188 to 235 months' imprisonment; and (2) the parties' stipulated Guidelines range of 135 to 168 months' imprisonment.  Of the ten-year sentence the Court imposed, Burman has served only three years.

(Order (Dkt. No. 88) at 7)

In sum, analysis of the Section 3553(a) factors continues to weigh against granting relief.

## CONCLUSION

For the reasons stated above, Defendant Burman's motion for compassionate release (Dkt. No. 89) is denied.

Dated: New York, New York
February 21, 2021

SO ORDERED.

*Paul G. Gardephe* (signature)

Paul G. Gardephe
United States District Judge